# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20228-CIV- LENARD/TORRES

TRAFFIC SPORTS USA, INC.,

        Plaintiff,

vs.

FEDERACION NACIONAL AUTONOMA
DE FUTBOL DE HONDURAS,

        Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SANCTIONS

This matter is before the Court upon Defendant's Motion for Sanctions [D.E. 5], Plaintiff's Response thereto [D.E. 12], and Defendant's Reply [D.E. 17]. The Court also heard argument from the parties on the Motion in this closed case. Upon consideration of the motion, response, and reply, and the record, the Court hereby denies Defendant's Motion for Sanctions.

### I. BACKGROUND

The pending case is the second time that the parties have been before this Court in connection with a contractual dispute between a sports agency and the Honduran Soccer Federation. The Court's Orders in *Federacion Nacional Autonoma de Futbol de Honduras v. Traffic Sports USA, Inc.,* No. 06-22359-CIV-LENARD/TORRES ("the 2006 action"), provide a more thorough recitation of the background of this litigation.

In short, Plaintiff Traffic Sports ("Traffic") originally filed suit in June 2006 in Florida state court to compel arbitration of claims arising under an agreement with Defendant Federacion Nacional ("the Federation"). Though the Federation had actual notice of the filing of that case, it did not respond to the complaint and permitted a default judgment to be entered, presumably based upon a perceived lack of proper service of process. The state trial court entered default judgment to compel arbitration, appointed an arbitrator, and ordered the Federation to appear before that arbitrator.

The Federation moved to set that judgment aside, relying in part upon the pendency of its own preferred arbitration proceeding. The state court, however, refused to set aside its final judgment and sought to enforce its arbitration order. The Federation appealed those trial court orders to the Third District Court of Appeal. Ultimately, the Court of Appeals affirmed the trial court's judgment without opinion.

But while that appeal was pending, the Federation also sought relief through the 2006 action filed in this federal court that sought to enjoin, under the auspices of the Federal Arbitration Act, prosecution of Traffic's state court litigation in favor of an order compelling Traffic to participate in the arbitration proceedings that the Federation preferred. After full briefing and argument, this Court dismissed that 2006 action based upon claim preclusion that resulted from the binding final judgment in the state court action that had rejected the Federation's arguments in favor of its own arbitration remedy. The Federation appealed that dismissal to the Eleventh Circuit Court of Appeals, which had not rendered its decision at the time of the filing of the pending motion. Case No. 08-10227-BB (11th Cir.).

Following the Federation's first foray to federal court to avoid participation in the state court-ordered arbitration proceeding, the arbitrator commenced the arbitration proceeding on January 11, 2008. Testimony was taken and evidence was introduced that day, but the proceedings were continued in order to permit Traffic to provide additional information and to allow the Federation to file a counterclaim. The hearing was continued to February 25, 2008.

At that stage, the Federation tried once more to obtain federal relief. This time the Federation sought to "remove"the original state court action back to this Court through this second case number. Remember that the Federation had not taken that route initially upon the filing of the state court action. The basis for this removal was the Federation's purported right to remove pursuant to 9 U.S.C. §§ 205, 301. Anticipating the obvious – that the Federation's newly removed action was untimely and barred by the earlier proceedings – the Federation argued that it was permitted to remove the original state court action "at any time before the trial thereof. . . ." Section 205, it was argued, permitted this removal notwithstanding the traditional thirty-day time limit for removal to federal court, provided for under 28 U.S.C. § 1446, "because the circuit court's order compelling arbitration does not pertain to the merits of the parties' claims, and moreover because the Arbitrator has not concluded a hearing on the merits, there has been no adjudication on the merits, and therefore no trial has occurred within the meaning of section 205." [D.E. 1 at 9].

This Court, through Judge Lenard's Order that granted Traffic's Motion to Dismiss or Alternative Motion to Remand, rejected that argument:

> The Court finds that removal of this case – a case in which there exists a final state court judgment, arbitration proceedings have commenced pursuant to that state court judgment, and this Court has already dismissed the same claim(s) Federacion apparently now seeks to remove to this Court on the basis of the state court judgment – is untimely and improper under Section 205. Although no "trial" per se has occurred in this matter, there is no longer a pending action in state court relating to the arbitration. Rather, there is a final state court judgment by virtue of which the entirety of the claim that was tendered for decision was adjudicated – namely, whether the parties were required to arbitrate breach of contract claims and in what arbitral forum. Only the arbitration proceeding itself remains pending, which, pursuant to the state court's final judgment, had already commenced before Federacion filed the Petition for Removal in this Court. As such, it cannot be said that this action was properly or timely removed under Section 205.

[D.E. 11 at 5].

For these reasons the Court dismissed this second action and remanded the case back to state court.

Following that remand, as it turned out, the arbitration went forward before the state court-appointed arbitrator who ultimately found in the Federation's favor. That arbitration awarded was then confirmed through Judge Gold's Order recently entered in Case No. 08-21505-MC-Gold (S.D. Fla. Aug. 29, 2008). Judge Gold also denied the Federation's motion for sanctions against Traffic under Fed. R. Civ. P. 11 that was filed in that confirmation proceeding.

In this proceeding it was Traffic that filed the motion for sanctions, which was filed together with its motion to dismiss. This is the last remaining motion pending in this drawn out litigation. Traffic's pending motion sought sanctions against the Federation for pursuing this untimely removal in federal court based upon a frivolous

timeliness argument under 9 U.S.C. § 205. [D.E. 5].[1]  Traffic argued that the Federation's removal tactic was pursued in bad faith simply to delay the state court arbitration, notwithstanding the Federation's unsuccessful appeal to the Third District Court of Appeal and to this Court through the 2006 action.  Having failed in those efforts, Traffic argued, the Federation's last stab at delay through this removal, which also ultimately failed, warranted monetary sanctions under the Court's inherent authority and 28 U.S.C. § 1927.

This final matter was referred for disposition to the undersigned in the same Order that dismissed the Federation's petition in this case. [D.E. 11]

## II.    ANALYSIS

The pending motion for sanctions is first based on the Court's inherent powers. Federal courts have the inherent power to issue sanctions against parties or their counsel for abusive litigation practices.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *Kleiner v. First Nat.l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985); *In re Roger Novak*, 932 F.2d 1397, 1406 (11th Cir. 1991) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962), "'Inherent powers' describes 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'").  "Such powers are 'essential to the administration of justice.'"

---

[1]  Similarly, Traffic filed a motion for sanctions in the appeal filed in the 2006 action, but that motion was denied by the Eleventh Circuit on July 10, 2008, when it stayed the appeal pending disposition of the confirmation proceeding.  That appeal is now closed and moot following Judge Gold's enforcement of the arbitrator's award. [D.E. 25].

*In re Roger,* 932 F.2d at 1406 (quoting *Young v. United States*, 481 U.S. 787, 795 (1987)).

The key to unlocking a court's inherent power is a finding of bad faith. *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995); *see also Chambers v. Nasco*, 501 U.S. 32, 45-46 (1991) (finding that when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons," the Court may exercise its inherent powers as a basis for rendering sanctions). In particular,

> A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.

*Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (internal quotation and citation omitted)). Moreover, sanctions resulting from such a finding may include dismissal of the case, assessment of attorneys' fees and costs, monetary penalties payable to the Court and/or disqualification of counsel. *See, e.g., Kleiner*, 751 F.2d at 1209.

However, courts considering the exercise of inherent powers, given its potency, must govern themselves "with restraint and discretion." *Roadway Express,* 447 U.S. at 764; *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1176 n.4 (11th Cir. 2005). "Recognition and application of such power is 'grounded first and foremost upon necessity.'" *In re Novak*, 932 F.2d at 1406 (quoting *U. S. v. Providence Journal Co.*, 485 U.S. 693, 701 (1988)); *see also Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d

98, 109 (3rd Cir. 1999) ("A trial court should avail itself of its inherent sanctioning power only when absolutely necessary"). Accordingly, a court may only invoke its inherent power when essential to protect its ability to function. *In re Novak*, 932 F.2d at 1406; *see, e.g., Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir. 2001).

Traffic's motion seeks an award of attorneys' fees under the Court's inherent power for having to successfully defend itself in this proceeding in response to the Federation's bad faith petition for removal. Traffic seeks fees as against the Federation for pursuing knowingly vexatious litigation by removing the state court action at such a late date in order to stall and derail the arbitration proceedings that were already well underway.

Additionally, Traffic's motion seeks sanctions against the Federation's counsel under 28 U.S.C. § 1927. Section 1927 provides, in pertinent part, that: "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Section 1927 is not a "catch-all" provision for sanctioning objectionable conduct by counsel. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). To justify an award of sanctions a court must find that three predicates apply: (1) an attorney must engage in unreasonable and vexatious conduct; (2) this conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *Id.*

An attorney's conduct meets the first of these conditions "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Hudson v.*

*International Computer Negotiations, Inc.,* 499 F.3d 1252, 1262 (11th Cir. 2007) (quoting *Amlong & Amlong, P.A. v. Denny's Inc.*, 457, F.3d 1180, 1190 (11th Cir. 2006)). For an attorney's conduct to be classified as egregious, the attorney must knowingly or recklessly pursue a frivolous claim. *Hudson*, 499 F.3d at 1262. Negligent conduct alone will not support a finding of bad faith under § 1927, and for sanctions to be appropriate something more than a lack of merit is required. *Id.*

"While an attorney's conduct must be tantamount to bad faith, 'for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct.'" *Id.* at 1262 (citing *Amlong & Amlong*, 457 F.3d at 1190). "What is crucial is whether, regardless of the attorney's subjective intentions, the conduct was unreasonable and vexatious when measured against an objective standard. *Id.* That is not to say the attorney's purpose or intent is irrelevant. Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[]' if it is done with a malicious purpose or intent." *Id.* (internal citations omitted).

After a thorough review of the record in this proceeding, as well as the 2006 action, it is certainly easy to understand why Traffic filed the pending motion and why it seeks some relief against the litigation tactics that the Federation and its counsel employed in this case. In short, the Federation would not take "no" for an answer. Based on its own short-sighted decision to ignore the state court proceedings on the assumption that the state court had no jurisdiction over it, rather than timely filing

a motion to quash service of process or *immediately* seeking to remove the action to federal court, the Federation was left with only untimely and meritless procedural tactics to avoid the arbitrator's ruling in this case. Those tactics were deemed necessary to upset the state court's determination as to how arbitration had to proceed. In the end, of course, those tactics lost sight of one of the central purposes underlying the parties' arbitration agreement: a reliable, speedy and efficient mode of dispute resolution.[2]

Clearly, this Court was also not impressed with the Federation's short-sighted decisions. After conferring a great deal of time and attention to the Federation's original arguments in the 2006 action, the Court dutifully disposed of that action after giving the Federation every consideration it was entitled to. Yet, when the Federation returned to this Court with its attempt at a second bite at the apple, the Court summarily dismissed the case and expressly reserved jurisdiction to decide if sanctions should be awarded in response to Traffic's motion. It did so purposely because the motion presented, at least on its face, a compelling case for an award of sanctions to dissuade litigants from taking this overzealous approach.

That being said, our frustrations with a litigant's decisions are not enough, by themselves, for us to upset the standard American Rule that requires parties to bear the burden of their own attorneys' fees. As the Court's analysis of the applicable law makes clear, the Court cannot simply grant the pending motion for fees because it

---

[2]  Ironically those machinations failed but yet the Federation succeeded before the state court's arbitrator, a highly respected retired judge who obviously did not allow his own frustration at the Federation's actions from affecting his objective view of the merits of the case.

disagrees with the manner in which the Federation handled this case. Rather, under either the Court's inherent powers or section 1927, the Court must first conclude that the Federation and its counsel pursued their tactics in bad faith. That finding is, intentionally, a difficult mountain to climb. *See,e.g., Amlong & Amlong,* 500 F.3d at 1241-42 ("negligent conduct, standing alone, will not support a finding of bad faith under § 1927 – that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney."); *Schwartz,* 341 F.3d at 1225 ("'Bad faith' is the touchstone. Section 1927 is not about mere negligence.").

The question here is whether the Federation and its lawyers acted in a way that was "particularly egregious" by "knowingly or recklessly" pursuing a frivolous claim or needlessly obstructing the litigation. The Court finds that the Federation and its lawyers did not knowingly pursue a frivolous claim.[3] The Court concludes that they genuinely believed they could take advantage of the provisions of section 205 of the Federal Arbitration Act. They did not pursue this avenue solely to obstruct the state court proceeding for obstruction's sake, but instead because they sincerely – though mistakenly – believed that the arbitration proceedings that were being mandated by the state court would unfairly prejudice them. The record shows that the Federation and its counsel made it clear throughout the state court litigation, the 2006 action, and this proceeding that it believed the arbitration method chosen by the state court judge

---

[3] The Court's finding is based on the paper record presented in this record, as supplemented by the parties where appropriate. Neither party requested an evidentiary hearing. The parties agreed that the Court dispose of the pending motion on the paper record.

was invalid and contrary to the requirements of the parties' agreement. A review of all those arguments shows that there was some support for that position, even though it may ultimately have been meritless.

Consequently this is not a case about a litigant exercising "knowing" bad faith by filing or prosecuting litigation for an improper purpose. There was no malicious intent nor was there an intent to harass the opposing party. *See Amlong & Amlong,* 500 F.3d at 1240.

The more difficult question is whether the Federation and its counsel were *recklessly* pursuing frivolous litigation through the filing of this particular removal. Traffic makes a persuasive argument that the Federation's litigation tactics were reckless, because they simply reflected unbridled disagreement with the arbitrator, state court trial judge, the Third District Court of Appeal, and this United States District Court. In other words, the Federation's removal of the state court proceeding at such a late stage of the case was reckless because they knew or should have known that they had previously waived any right to remove the original state court case to federal court. And having failed at their attempt to institute an original federal proceeding, the Federation and its lawyers acted vexatiously by digging back into their bag of tricks with this untimely removal.

To decide if the Federation was reckless, of course, we must consider the merits of the underlying argument that Judge Lenard rejected. In the face of a single district court decision that the Federation claimed supported its interpretation – that removal was proper at any time under section 205 because no trial proceeding was ever conducted in the state court case – the Court relied upon an on-point Second Circuit

case, *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.,* 31 F.3d 70 (2d Cir. 1994). It clearly stands for the proposition that section 205's timeliness language does not per se require a bench or jury trial. Instead, the language of the statute is directed at a final adjudication of a state court proceeding. Because, after all, not every case that is pursued in state courts across the country actually require a physical trial. Arbitration proceedings are such examples of cases where a party seeks to obtain a particular court order to compel arbitration, which of course does not normally require a trial. The Federation's argument simply ignores this reality.

It is also troubling that the Federation's response to the motion to dismiss never even cited this relevant Court of Appeals decision. That, indeed, is potentially evidence of reckless conduct because any appellate court decision is persuasive authority on a district court, far more persuasive than a district court case, and is especially persuasive in the absence of controlling Court of Appeals authority. To be fair, however, that decision was also not cited or relied upon by Traffic. It was the Court that identified that decision *sua sponte* upon reviewing the motion to dismiss. That does not say much for the lawyers' research skills, but at the same time it does not necessarily show recklessness warranting sanctions where neither party cited the case.

The primary reason for that is that the absence of controlling authority from the Eleventh Circuit theoretically allowed the Federation to rely on the Louisiana district court case in support for its position. It is not so unreasonable to argue that the language of the statute, interpreted narrowly, literally required a "trial." Absent such a trial, which did not occur here, and prior to the termination of the arbitration

proceeding that was compelled in the state court litigation, it was not so glaringly frivolous to come up with an argument that section 205's limitation was not yet triggered. As *LaFarge* shows, other lawyers have come up with that same type of argument.

Though clearly meritless, from our perspective, the absence of any compelling contrary authority in this Circuit allowed that argument to be raised here. As the Supreme Court reminded us in interpreting frivolousness for purposes of 42 U.S.C. § 1988, the Court should not interpret the term "frivolousness" so broadly that it discourages all but the most well-supported and "airtight" claims:

> [Courts should not] engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. . . . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421-22 (1978), *quoted in Cordoba v. Dillard's,* 419 F.3d at 1181-82 (reversing district court's finding of objective frivolousness because dicta in prior opinions supported plaintiff's interpretation of law).

Furthermore, our own analysis of the timeliness component of section 205 reveals relatively few cases that have interpreted and applied that provision. As a practical matter, of course, that is probably likely because parties usually do not wait over one year to file a removal of a state court proceeding like this one. The issue is thus rarely litigated. On the other hand, the absence of significant cases interpreting this provision also must allow for some give in how strictly or loosely one should construe the statute. In other words, the argument that no "trial" had yet occurred,

thereby allowing removal well beyond the normal thirty-day period, is not beyond the pale. There is no Southern District of Florida or Eleventh Circuit decision that, prior to this Court's Order, rejected that very broad interpretation. And, theoretically, a party could argue to the Eleventh Circuit that the Second Circuit's decision in *LaFarge* should not be followed. Given the paucity of cases addressing this particular theory, it is unfair to conclude with the benefit of hindsight that the Federation's argument was self-evidently meritless such that it could never have been raised.

Admittedly Traffic's argument for recklessness and frivolousness is also persuasive. But the record evidence in this case does not allow for the Court to sanction the Federation or its counsel for pursuing this untimely removal petition over this state court proceeding. When measured against an objective standard, as required by the Eleventh Circuit's precedents in this area, the record fails to support a clear and convincing finding that the Federation or its counsel's conduct here was so egregious that it was tantamount to bad faith.

And though the issue is a close one, the fact that it is that close means that a sanction for an award of fees for reckless litigation is probably ill-advised. We reach that conclusion here, which is also consistent with the other federal judges that have looked at this case, both at the district level through Judge Gold's confirmation proceeding, and at the Court of Appeals level. All these judges denied the parties' dueling motions for sanctions. We conclude that we should follow that approach as well, and allow this case to, *finally,* reach an end.

### *III.  CONCLUSION*

Based on the foregoing, it is hereby **ORDERED and ADJUDGED** that Traffic's Motion for Sanctions [D.E. 5] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 31st day of October, 2008.

_____
EDWIN G. TORRES
United States Magistrate Judge